# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CLIFTON PHILLIPS,

         Plaintiff,

 v.                  5:16-CV-1140 (LEK/ATB)

DAVID PROUD, et al.,

         Defendants.

CLIFTON PHILLIPS, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDTION

  The Clerk has sent to the court for review a complaint brought pursuant to 42 U.S.C. § 1983, originally filed on September 19, 2016 by pro se plaintiff Clifton Phillips. (Dkt. No. 1 ("Compl.")). On September 20, 2016, the Honorable Gary L. Sharpe ordered that the case be administratively closed because plaintiff's IFP application was incomplete. (Dkt. No. 4). On October 20, 2016, plaintiff filed a new motion to proceed IFP, together with the properly completed forms. (Dkt. Nos. 5). On October 20, 2016, Senior Judge Sharpe ordered reopening of the action, and on October 27, 2016, this case was re-assigned to Senior Judge Lawrence E. Kahn. I will now conduct the initial review.

**I. IFP Application**

  As to plaintiff's IFP application, the Court finds that plaintiff has demonstrated economic need and has now filed the appropriate forms. As a result, plaintiff's motion to proceed IFP is granted.

  In addition to determining whether plaintiffs meet the financial criteria to

proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

## II. **Complaint**

In a very lengthy complaint, plaintiff alleges that defendants violated his rights under the Fourth Amendment by engaging in an illegal search and seizure on July 21, 2015. (*See generally* Complaint ("Compl.")) (Dkt. No. 1). Plaintiff also alleges that the defendants manufactured and "planted" evidence in violation of plaintiff's Fifth Amendment rights. Finally, plaintiff alleges that his Sixth Amendment rights were violated when defendants maliciously prosecuted him for "crimes he did not commit." (Compl. ¶ 7). The court will briefly review the facts as stated by plaintiff.

Plaintiff alleges that on July 21, 2015, his seventeen-year-old son woke him up and asked if plaintiff would take him to school because he was late. (Compl. ¶ 6 at 7).[1] Plaintiff and his son rushed out of the house and were driving in the "family van" up Corcoran Hill on Glenwood Avenue in Syracuse, New York, when plaintiff "noticed" an unmarked police car following them with its siren on. (Compl. ¶ 6 at 7-8). Plaintiff claims that he immediately pulled over, and he was approached by two "undercover" police officers,[2] who ordered plaintiff and his son out of the van, searched them, and took their cellular telephones and money. (Compl. ¶ 6 at 8). Plaintiff states that he was handcuffed, and held with his son until plaintiff's parole officers – defendants Paul Casler and "P.O. Golemberski"[3] – arrived on the scene, at which time, plaintiff's son was released. (*Id.*)

---

[1] Plaintiff has numbered the pages of his complaint at the top, and the court will refer to the pages of the complaint as assigned by plaintiff.

[2] Plaintiff states that he later learned that these officers were defendant police officers Scott Fura and Jason Eiffe. (Compl. ¶ 6 at 8).

[3] It does not appear that this parole officer has been named as a defendant.

3

Plaintiff was taken back to his home in handcuffs by the officers. (Compl. ¶ 6 at 9). The "family van" was "detained" and driven back to plaintiff's home (*Id.*) Once they arrived at plaintiff's house, defendant Casler took plaintiff's keys out of his pocket, asked which key was for the house, and used the key to enter plaintiff's home without asking for consent.[4] (Compl. ¶ 6 at 10). Plaintiff alleges that when they entered the house, defendants handcuffed his wife, went upstairs and woke his son and his girlfriend, handcuffed them, and brought them downstairs to sit on the couch. Later, plaintiff's daughter's boyfriend, who had left the house earlier, was brought back to the house by officers.[5] Plaintiff states that "bogus" cocaine was found in his daughter's car, which was "used" to obtain a search warrant. (Compl. ¶ 6 at 11-12).

Plaintiff states that the parole officers and the police officers went upstairs, and defendant Fura stated that he saw what appeared to be "cocaine residue" on plaintiff's dresser, and marijuana, heroin, and heroin baggies in plaintiff's son's room. (Compl. ¶ 6 at 12). Plaintiff claims that this was "all lies," and that no one was ever charged with the "residue" that was allegedly found and which was used as the basis for probable cause to obtain a search warrant. (*Id.*) Plaintiff has attached police and parole reports of the incident, and points to perceived inconsistencies in the officers' statements in an attempt to show that they were fabricating the discovery of these drugs. (*Id.*)

Plaintiff states that after the officers obtained a search warrant, "about forty"

---

[4] Plaintiff claims that in defendant Fura's subsequent search warrant application, he lied by stating that plaintiff gave the officers permission to enter the home. (Compl. ¶ 6 at 10).

[5] Apparently, prior to being stopped by the police, he had dropped plaintiff's daughter off at work. (Compl. ¶ 6 at 10).

police officers came into his home. (Compl. ¶ 6 at 13). Some of the officers went upstairs, and some of the officers went into the basement. The officers were a "mixture" of Syracuse Police Special Investigation Division (Narcotics); the United States Marshal's Gang Violence Task Force; "G.I.V.E.," the Sheriff's Department; and "Parole." (*Id.*) Plaintiff states that approximately twenty officers went downstairs, and after an hour, they came back upstairs, stating that the basement was "clear." (*Id.*) Defendant Proud came downstairs and asked if anyone had searched the basement, and "a few of them" told Proud that the basement was "clear." (*Id.*) At that point, Proud and a few other officers went down into the basement, and "miraculously" found seven grams of cocaine and a bottle of Inositol in an "obvious" place that would never have been missed by all the previous officers who had gone into the basement. (Compl. ¶ 6 at 14).

Plaintiff claims that defendants Proud and Summers "planted the drugs and Inositol" in the basement. Plaintiff states that there was "no way" that all those "professional officers" would have missed that contraband when they were in the basement before defendants Proud and Summers. (*Id.*) Plaintiff claims that defendant Proud has been "crooked" before, and that Proud "set [plaintiff] up" in 1993, when he stated that he saw plaintiff "throw" some drugs that actually belonged to someone else. (Compl. ¶ 6 at 15). Plaintiff recites the previous incident with defendant Proud and states that defendant Michael Ferrante was the prosecutor in the previous case as well. Plaintiff claims that they planted drugs on him then. Plaintiff claims that the case was subsequently dismissed, and that Proud and Ferrante "made all that up."[6] (*Id.*)

---

[6] Plaintiff is not attempting to sue over the previous incident.

Plaintiff claims that the City of Syracuse was aware that Proud was engaging in this type of conduct, and that he had numerous complaint filed against him, but the City allowed him to "run roughshod" over peoples' constitutional and civil rights. Plaintiff claims that the "same thing" is true about the New York State Division of Parole and defendant Rigby, a Parole Officer who allegedly abused his authority when he allowed all the law enforcement agencies to violate plaintiff's constitutional rights. (Compl. ¶ 6 at 16).

Plaintiff alleges that his case was "no parole operation," and that it was a "gun" operation. Plaintiff claims that the real investigation started three days before, when his son was pulled over. (*Id.*) Apparently, plaintiff's son possessed some marijuana and money, and the police told him that he could keep the drugs and the money if he would give them a gun. So, plaintiff's son "went and bought a gun and gave it to the police," without telling plaintiff about the incident. (Compl. ¶ 6 at 16-17). Plaintiff's son thought that if he gave the gun to the police "that situation was supposed to be over," but instead when defendant Proud heard that it was plaintiff's son, defendants Proud and Ferrante "targeted" plaintiff by allowing defendant parole officers Rigby and Casler to "raid" plaintiff's house. Plaintiff claims that defendants Rigby and Casler lied at plaintiff's parole revocation hearing, testifying that the entry into plaintiff's home was a "routine home inspection." Plaintiff alleges that it is "illegal" for "Parole" to assist another agency "and act as a conduit to allow that agency to search a parolee." (Compl. ¶ 6 at 17).

Plaintiff claims that defendant Proud went to defendant prosecutor Ferrante, and these individuals "put the whole operation together," and that this was part of the

6

reason that defendant Ferrante was fired from the District Attorney's Office. (Compl. ¶ 6 at 18-19). Plaintiff claims that defendant Ferrante "bungled" the whole case, and let the speedy trial clock run out so that these facts would not "come out." Plaintiff states he is suing defendant Ferrante "as a private citizen," not in his capacity as a former Assistant District Attorney. (Compl. ¶ 6 at 19).

Plaintiff also alleges that defendant Syracuse Police Officer David Metz fabricated testimony and stated that the "raid" on plaintiff's house was a "routine parole home inspection." Plaintiff claims that defendant Metz "intentionally violated" plaintiff's Fourth Amendment rights. Plaintiff states that defendant Police Officer Jeffrey Ballagh along with defendants Fura and Eiffe "planted or fabricated" the cocaine residue that was "allegedly" found on plaintiff's dresser. Again, plaintiff cites to perceived inconsistencies in the investigative reports that he has attached to the complaint. (Exhibits) (Dkt. No. 1-1). These inconsistencies allegedly show that the officers were lying and fabricating evidence in order to arrest plaintiff. Plaintiff states that this lawsuit is "about police corruption," planting evidence, illegal arrest, malicious prosecution, parole corruption, and prosecutorial misconduct. (Compl. ¶ 6 at 21). Plaintiff seeks substantial monetary relief.

I. **Eleventh Amendment**

   A. **Legal Standards**

The Eleventh Amendment provides that states have immunity against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). An action against state officers in their official capacities, or an action against an agency of the state, is tantamount to an action against the state. *Yorktown Medical*

7

*Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions); *Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (agencies of the state).

 **B. Application**

 Plaintiff has sued New York State and the New York State Division of Parole. The Eleventh Amendment prohibits a suit for damages against the state as well as against a state agency such as the Department of Parole. Plaintiff has also sued individual parole officers, who may be named in a section 1983 action. However, he may not sue the Division of Parole or New York State itself. Thus, I will recommend dismissal of the complaint as against the NYS Division of Parole and New York State.

 Plaintiff has also named the Gun Involved Violence Elimination ("GIVE") Initiative. GIVE is defined as a New York State "Initiative." http://criminaljustice.ny.gov/crimnet/ojsa/impact/index.htm. Plaintiff may not sue the "Initiative" because it would be tantamount to suing the State of New York, and would also be prohibited by the Eleventh Amendment.

**II. <u>Syracuse Police Department</u>**

 **A. Legal Standards**

 Departments that are merely administrative arms of a municipality do not have a legal identity separate from the municipality and may not sue or be sued. *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. Nov. 9, 2012) (citing *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y.2002) (dismissing claim against the police department); *Umhey v. County of Orange*, 957 F. Supp. 525, 530–31 (S.D.N.Y. 1997) (dismissing case against the County Board of Ethics). Therefore,

claims asserted under 42 U.S.C. § 1983 will be dismissed against an administrative department or sub-division of a municipality or county. *Id. See also Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (because the county sheriff's office was an administrative arm of the county, it was not the appropriate party in a section 1983 action)).

### B. Application

Plaintiff has sued the "Syracuse Police Department" in addition to the "City of Syracuse." As stated above, the Police Department does not have a separate legal identity from the City. Thus, plaintiff may not name the Police Department as a defendant. The same is true for the "Gang Violence Task Force," which is part of the Syracuse Police Department.[7] Plaintiff has already named the City of Syracuse as a defendant, thus, this court recommends dismissing the "Syracuse Police Department" as redundant.

## III. United States Marshal's Service

### A. Legal Standards

The federal "counterpart" to a section 1983 action would be an action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* established a cause of action for monetary damages resulting from the violation of a constitutional right by federal agents or employees,

---

[7] http://www.syracusepolice.org/listing.asp?orgId 141. The Gang Violence Task force is responsible for collaborating with other agencies in an effort to eliminate violent gangs and their members. This task force is made of various law enforcement agencies, some of which are federal and may not be sued under section 1983, but as discussed below, whose individual members would have to be sued under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) ("*Bivens*").

acting under color of federal law. *Arar v. Ashcroft*, 585 F.3d 559, 571-72 (2d Cir. 2009) (discussing history of Bivens actions). A *Bivens* action, like a section 1983 action, is brought against an individual defendant for a constitutional violation. *Id.*

### B. Application

Plaintiff has named the United States Marshal's Service. The Marshal's Service is clearly not an "individual" defendant and is an agency of the United States Government. As a federal agency, Marshal's Service is protected against suit by the sovereign immunity afforded to the United States. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Absent an unequivocal waiver of that sovereign immunity in statutory text, this court lacks jurisdiction. *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004); *Marakova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The United States has not waived its sovereign immunity with respect to constitutional claims seeking money damages that are brought directly against the United States or an agency thereof. *Robinson*, 21 F.3d at 510. Plaintiff seeks damages for "constitutional" violations only. Thus, he may not sue the United States Marshal's Service in this action, and I will recommend dismissal as to the Marshal's Service. The remainder of the defendants are individuals, and this court will address plaintiff's complaint as to them.

## IV. *Heck v. Humphrey*

### A. Legal Standards

Civil lawsuits may not be used to collaterally attack criminal convictions or confinements. *Heck v. Humphrey*, 512 U.S. 477 (1994); *Croft v. Greenhope Services for Women, Inc.*, No. 13 Civ. 2996, 2013 WL 6642677, at *5 (S.D.N.Y. Dec. 17, 2013)

(citing *Heck, supra*). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.*S*. at 486-87.

### B. Application

In this case, plaintiff alleges a variety of claims, including violations of due process, equal protection, malicious prosecution, and illegal search and seizure under the Fourth Amendment. (Compl. ¶ 7). Plaintiff alleges that defendant Ferrante intentionally let the speedy trial clock run on plaintiff's case. It is unclear whether the criminal charges were terminated in plaintiff's favor. The court notes that plaintiff was incarcerated until recently, but it is not clear whether the custody was due to a criminal conviction or based upon a violation of his parole.[8] In addition, *Heck* does not apply to bar a section 1983 action if the plaintiff's sentence has expired. *Davis v. Cotov*, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) (citing *Spencer v. Kemna*, 523 U.S. 1, 20-21 (1998)). Thus, the court will order the case to proceed for purposes of initial review as against the individual officers who plaintiff alleges were responsible for manufacturing and "planting" evidence.[9]

---

[8] It is clear from the exhibits that plaintiff attached to his complaint that he was charged with violating the conditions of his parole. (Dkt. No. 1-1 at 1). Plaintiff has also attached copies of criminal complaints relating to this incident. (Dkt. No. 1-1 at 7, 10, 11).

[9] The court notes that many of plaintiff's allegations may have no merit. Plaintiff claims that his constitutional rights were violated because he was not charged with the "cocaine residue" that was "used" to obtain a search warrant. The plaintiff then states that defendants found more cocaine and heroin after the search. Thus, it would not be unusual that plaintiff was not charged with "residue," when more substantial quantities of drugs were found as a result of the search. In addition, deference is

## V. Assistant District Attorney

### A. Legal Standards

Prosecutors are afforded absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Scloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). Absolute immunity has not been extended to situations in which the prosecutor gives legal advice to the police. *Burns v. Reed*, 500 U.S. 478, 492-93 (1991) (citations omitted). *See Brown v. Oneida County*, No. 6:15-CV-849, 2016 WL 4275727, at *10 (N.D.N.Y. Aug. 12, 2016) (denying absolute immunity when precise

---

given to a district attorney regarding whether to prosecute, and the general duty to prosecute all crimes or any particular crime is not required or supervised. *See Staten Island Branch of the NAACP v. State of New York Grievance Committee*, 52 Misc. 3d 233, 239-40 (Sup. Ct. Kings Cty. 2016). However, plaintiff also alleges that all of the evidence was manufactured and some of it was planted by the officers. The court is unwilling to find facts at this point in the case.

actions of the prosecutor were unknown). In these situations, the prosecutor would be entitled only to qualified immunity.

B. **Application**

In this case, plaintiff has named Michael Ferrante as a defendant. Mr. Ferrante is a former Assistant District Attorney in Onondaga County. It does not appear that plaintiff is bringing claims associated with the prosecution itself. Plaintiff claims that defendant Ferrante was involved with the police officers and other law enforcement personnel in "planting" drugs in plaintiff's house. (Compl. ¶ 6 at 18). Plaintiff states that he believes "that Proud went to Michael Ferrante and they put the whole operation together . . . ." (*Id.* at 18-19). Plaintiff also states that defendant Ferrante intentionally let the speedy trial clock "run out," so that these "facts" would not be disclosed to the public.[10] (*Id.* at 19).

Although the complaint is not completely clear, plaintiff seems to be alleging that defendant Ferrante was involved in the investigation and the alleged attempt to manufacture evidence prior to the prosecutorial phase of the case, so as to falsely accuse the plaintiff. These statements by plaintiff are sufficient[11] to allow the complaint

---

[10] Plaintiff does not appear to be basing any claims on the denial of a speedy trial or on the prosecution itself. Such claims would entitle the prosecutor to absolute immunity because they are associated with the judicial process itself. *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995) (absolute immunity afforded to the prosecutor when claims are directed at conduct in initiating a prosecution and presenting the State's case, insofar as that conduct is "intimately associated with the judicial phase of the criminal process." *Brown v. Oneida County*, 2016 WL 4275727 at *10 (citations omitted).

[11] Plaintiff is pro se, and the court must interpret plaintiff's complaint liberally. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008). The court considers all possible grounds for relief that plaintiff could be raising. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

to withstand initial review as against defendant Ferrante. This court makes absolutely no finding regarding whether these claims would survive a properly supported motion to dismiss or for summary judgment.

## VI. <u>Opportunity to Amend</u>

### A. Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B. Application

With respect to the claims against New York State and the State, Federal, and Municipal "Departments," the court recommends dismissing with prejudice. There is no way that the plaintiff could amend this complaint to state a claim as against these defendants.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 5) is **GRANTED**,[12] and it is

**RECOMMENDED**, that the entire complaint be **DISMISSED WITH PREJUDICE**, as to defendants **SYRACUSE POLICE DEPARTMENT, U.S. MARSHAL'S SERVICE, NEW YORK STATE DIVISION OF PAROLE, GIVE OPERATION IMPACT, STATE OF NEW YORK, and GANG VIOLENCE**

---

[12] The court notes that although plaintiff's application to proceed *in forma pauperis* has been granted, plaintiff will still be required to pay fees that he may incur in the future regarding this action, including, but not limited to, copying and/or witness fees.

14

**TASK FORCE**, and it is

RECOMMENDED, that if the District Court approves this recommendation, the Clerk be directed issue summonses and forward them, along with copies of the complaint to the United States Marshal for service upon defendants David Proud, Paul Rigby, Michael Ferrante, Paul Casler, City of Syracuse, William Summers, Scott Fura, Jason Eiffe, and Jeffrey Ballagh. The Clerk should also be directed to forward a copy of the summons and complaint to the Office of the Corporation Counsel of the City of Syracuse, the Onondaga County Attorney's Office, and the Attorney General of the State of New York, together with a copy of this Order, and the Court order a formal response to plaintiff's complaint be filed by the defendants or defendants' counsel as provided in the Federal Rules of Civil Procedure subsequent to service of process on the defendants, and it is

ORDERED, that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. **<u>Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys may be stricken by the Court.</u>** Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District, and it is further

ORDERED, that the Clerk serve a copy of this Order upon Plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 1, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge